662 P.2d 1341

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Van Bering ROBINSON,
Defendant-Appellant.**

No. 13747.

Supreme Court of New Mexico.

April 26, 1983.

Rehearing Denied May 12, 1983.

 

Toulouse, Toulouse & Garcia, James R. Toulouse, Lawrence W. Allred, Albuquerque, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

The appellant was charged in four separate indictments with two counts of auto burglary, five counts of commercial burglary, four counts of larceny, attempted armed robbery, two counts of armed robbery, conspiracy to commit armed robbery, and alternative counts of premeditated murder or felony-murder for the death of Albuquerque Police Officer Phil Chacon. Following a jury verdict of guilty on all counts, the appellant moved for a judgment notwithstanding the verdict or for a new trial, but his motion was denied. On appeal, this Court remanded the case to the district court for a hearing on the motion for a new trial. After a hearing, the district court again denied the motion. Mr. Robinson now appeals to this Court seeking reversal of his convictions. We reverse in part and affirm in part.

The events giving rise to this appeal began on September 10, 1980, when a lone black gunman held up a Kinney Shoe Store in Albuquerque. Officer Phil Chacon happened to be across the street from the store at the Battered Women's Shelter. Upon being informed of the robbery, he set out on his motorcycle in pursuit of the gunman's auto. He had just followed the getaway car into a parking lot when two shots rang out. Officer Chacon fell from his motorcycle and the gunman made good his escape.

## I

It is the contention of the appellant that the impeachment of Brian Iwanski through Renee Gonzales by an unfounded charge of theft was improper. We agree. Brian Iwanski and Renee Gonzales were the employees of Kinney Shoes who were robbed at gunpoint on the evening of September

10, 1980. The two men were the State's first witnesses. On cross-examination by defense counsel, Mr. Iwanski testified that the appellant was not the robber. During direct examination of Mr. Gonzales, the State asked him about statements that Mr. Iwanski had made concerning police threats and about Mr. Iwanski's resentment of those threats. In an effort to establish the veracity of Mr. Iwanski's accounts of police threats, defense counsel on cross-examination asked Mr. Gonzales whether he had found Mr. Iwanski to be honest and truthful. Mr. Gonzales replied in the affirmative. During the redirect examination of Mr. Gonzales, the State attempted to impeach Mr. Iwanski's credibility by eliciting testimony which disclosed that Mr. Iwanski had been fired by Kinney Shoes after an inventory audit revealed a $1,600 shortage. Mr. Gonzales further testified that the inventory shortages thereafter ceased, although there was no evidence that either Mr. Iwanski or another employee who was also fired was responsible for the deficit.

■ The questions put to Mr. Gonzales by the State suggested that Mr. Iwanski was guilty of embezzlement. Proof of the conviction of certain crimes may be used to impeach a witness. N.M.R.Evid. 609, N.M. S.A.1978. It has long been recognized in New Mexico that "[a]ll reasonable care, and the utmost good faith, must be exercised by the prosecutor, when questioning an accused about prior convictions, to the end that an accused is not prejudiced by suggestions that he has been convicted of a misdemeanor or felony, when in fact he has not been so convicted." *State v. Williams,* 76 N.M. 578, 582, 417 P.2d 62, 65 (1966); *State v. Miller,* 92 N.M. 520, 590 P.2d 1175 (Ct. App.1979); *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). The same safeguards govern the impeachment of the credibility of a witness other than the accused. *Dukes v. State,* 356 So.2d 873 (Fla. Dist.Ct.App.1978). New Mexico Rule of Evidence 609 was inapplicable in the instant case as there was no allusion to a conviction and the prosecuting attorney was apparently never prepared to offer documentary proof of a conviction. Nevertheless, the same rationale applies to the impeachment of a witness under N.M.R.Evid. 608(b).

■ New Mexico Rule of Evidence 608(b) prohibits the admission of extrinsic evidence to prove instances of a witness's prior misconduct not the subject of conviction for impeachment purposes except in certain limited situations. N.M.R.Evid. 608, N.M.S. A.1978. One of the factors a trial judge must consider in deciding whether to allow inquiry about past conduct is the character of the previous conduct. McCormick, Handbook of the Law of Evidence § 42 (2d ed. 1972); 3 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 608[05] (1982). In considering the character of the prior conduct, the trial court must take care to distinguish actual misconduct from a mere accusation of misconduct.

It should be understood by all courts that the only relevant circumstance is actual conduct, i.e., the fact, not the mere charge, of having misbehaved. If it is improper to prove this by extrinsic testimony on the stand, it is doubly improper to attempt to prove it by hearsay, and trebly improper when accompanied by a prohibition of any rebuttal of the hearsay by the witness or by others on his behalf.

3A J. Wigmore, Wigmore on Evidence § 980a (Chadbourn rev. 1970). Mr. Gonzales' testimony concerning suspicions of embezzlement did not amount to evidence of misconduct. The impeachment of a witness by insinuations based on unsubstantiated allegations of prior misconduct provides the trier of fact with no information relevant to the witness's credibility and carries a great potential for prejudice. Where, as in the instant case, the testimony relates to collateral matters and has no bearing upon the crime with which the defendant is charged, there is also a danger that the real issues of the case may become confused. The State's questions served no purpose except to arouse the prejudices of the jury against Mr. Iwanski. *See State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966).

The trial court abused its discretion in admitting Mr. Gonzales' testimony concerning Mr. Iwanski's firing and the subsequent cessation of inventory shortages. Mr. Iwanski's credibility could not logically be affected by testimony that his former employer suspected either him or a fellow employee of theft and that no deficits occurred after their departure. Mr. Robinson was entitled to the benefit of Mr. Iwanski's testimony free from innuendo that might lessen its force. It was not proper to allow Mr. Iwanski's testimony to be discredited by the recounting of mere suspicions about him.

The error was not harmless. Mr. Iwanski was one of only two eyewitnesses to the crime, and he was adamant in his opinion that Mr. Robinson was not the robber. Mr. Iwanski's credibility was therefore crucial and should not have been subject to impeachment by mere innuendo. At trial, no physical evidence was presented that directly linked Mr. Robinson with the robbery and killing. Mr. Iwanski's testimony was a significant part of the total evidence introduced and his credibility was central to the resolution of conflicting testimony. It is reasonably probable that the jury considered the testimony improperly elicited from Mr. Gonzales, for only by discounting Mr. Iwanski's testimony could they have arrived at their verdict. Clearly, the district court's error was prejudicial.

## II

The appellant claims that he was denied his constitutional right to effective assistance of counsel. Mr. Robinson contends that the public defender, while representing him, negotiated the plea agreement on behalf of Reginald Walker, his alleged partner in the armed robbery of Kinney Shoes and the killing of Officer Chacon, that led to Mr. Robinson's arrest and indictment for the robbery and murder. It is the appellant's contention that his convictions on those charges should therefore be reversed.

In September 1980, both Mr. Robinson and Mr. Walker were arrested for the armed robbery of Kinney Shoes and the homicide of Officer Chacon. An assistant public defender was assigned to represent Mr. Walker, and two other assistant public defenders were assigned to represent Mr. Robinson. The grand jury refused to indict either man. Some weeks thereafter, Mr. Walker was arrested on other charges, and his case was assigned to the assistant public defender who had represented him during the earlier grand jury proceedings. The Albuquerque Police Department continued to keep both men under close surveillance, and in February 1981, Mr. Walker was again arrested. A few days later Mr. Robinson was arrested on charges unrelated to those pending against Mr. Walker.

A defendant is entitled to effective representation of counsel. U.S. Const. amend. VI; N.M. Const. art. II, § 14. The right to effective assistance of counsel attaches at any critical stage of the prosecution. Such a stage is reached when a defendant is "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

Mr. Robinson's arrest in late February 1981, represented a critical stage in the prosecution. In the weeks prior to his arrest, he had been the prime suspect in the ongoing investigation of the Chacon homicide and the target of intense police scrutiny. The State was committed to either prosecuting Mr. Robinson for the crimes for which he was arrested in February 1981, or offering him concessions on those charges in exchange for his assistance in obtaining a conviction in the Chacon case. Mr. Robinson was "faced with the prosecutorial forces of organized society," *Kirby,* 406 U.S. at 689, 92 S.Ct. at 1882, and was therefore entitled to effective assistance of counsel from the time of his arrest in February 1981.

During the first week in March 1981, Mr. Walker indicated to the police that he wanted to talk about the Chacon homicide, and a deal was struck between the State and Mr.

Walker. The assistant public defender who represented Mr. Walker had been instructed by his supervisor that, because of the potential for conflict between the Robinson and Walker cases, he was not to negotiate a plea agreement for Mr. Walker without first obtaining the approval of his superiors. The assistant public defender apparently disregarded the orders of his supervisor and conferred privately with Mr. Walker about the plea before Mr. Walker spoke with the police. However, the attorney was not present during Mr. Walker's conversations with the police or when Mr. Walker signed his statement. At the time the State and Mr. Walker entered into their agreement, the public defender's office had no open cases on Mr. Robinson, although they knew that the public defender was to be appointed as Mr. Robinson's counsel on the charges that did not involve Mr. Walker.

As soon as the District Public Defender learned of Mr. Walker's plea agreement, he assigned both cases to separate and independent attorneys. On the day Mr. Robinson was arrested on the charges stemming from Mr. Walker's formal statement, notice of his arraignment was sent to his independent counsel. During the State's case in chief and again after the State rested its case, defense counsel moved for a dismissal of all charges against Mr. Robinson because the public defender had negotiated Mr. Walker's plea agreement while representing Mr. Robinson. Both motions were denied on the ground that the public defender was not representing Mr. Robinson at the time of Mr. Walker's plea agreement, although the public defender had represented Mr. Robinson in the past.

■ "Where a constitutional right to counsel exists ... there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). A lawyer who represents co-defendants whose interests conflict cannot provide the adequate legal assistance required by the Sixth Amendment. *See Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Although

the violation of the right to effective assistance of counsel does not depend on a showing of prejudice, *id.,* a defendant must show that his counsel actively represented conflicting interests. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The most recent United States Supreme Court case addressing the effect of multiple representation of defendants on the Sixth Amendment right to effective assistance of counsel is *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Court in *Cuyler* noted that a possible conflict of interest inheres in almost every instance of multiple representation, but held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. at 1719.

■ The potential for conflict between the Robinson case and the Walker case existed from the time the two men were arrested in September 1980, but an actual conflict between the two cases did not arise until Mr. Walker made his statement to the police in early March 1981. The representation of a criminal defendant and co-defendant turned prosecution witness by two lawyers who are members of the same association gives rise to a conflict of interest. *State v. Smith,* 621 P.2d 697 (Utah 1980). The danger that privileged information might be used, even inadvertently, to the detriment of one client or the other is present in almost every such situation. The conflict of interest in the public defender's office was foreseen and finally resolved by assigning both the Walker and Robinson cases to independent counsel. Only the potential for conflict between the cases existed at the time the public defender represented both men. As soon as an actual conflict developed, the public defender represented neither man.

■ Mr. Robinson was never represented by an attorney from the public defender who owed a conflicting duty to Mr. Walker

or who actively represented conflicting interests. Nevertheless, given these circumstances, the public defender's office came perilously close to representing clients with conflicting interests. Attorneys in public office should bear in mind that even the appearance of impropriety in the conduct of the office is to be avoided. *See State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (Ct. App.), *cert. denied,* 86 N.M. 372, 524 P.2d 988 (1974).

Under the facts in this case, we cannot conclude either that an actual conflict of interest adversely affected Mr. Robinson's lawyer's performance, that an actual, relevant conflict existed during the proceedings, or that there was a substantial possibility that a conflict of interest affected Mr. Robinson's lawyer's representation. Mr. Robinson's counsel at trial prosecuted the defense with competence and vigor. Mr. Robinson was not denied his constitutional right to effective assistance of counsel.

### III

Mr. Robinson asserts that prosecutorial misconduct in presenting Reginald Walker's plea agreement for judicial approval the day the appellant's jury was being selected denied the appellant a fair trial and requires that his convictions be reversed. Because of the presentation, Mr. Robinson moved to sequester the jury, to declare a mistrial, or for a change of venue on the ground that the presentation was deliberately timed to create publicity prejudicial to the appellant's right to a fair trial. The trial court denied the motions, choosing to rely on strong admonitions to the jury to avoid news accounts of the case to protect Mr. Robinson's rights. The presentation was attended by a news photographer and resulted the following day in a front-page article and picture showing Mr. Walker flanked by his attorney and an assistant district attorney. On voir dire, the jurors declared that they could consider the evidence fairly and impartially. After jury selection and before the appearance in the press of the article and picture, the trial court strictly admonished the jury to avoid news accounts of the trial. There is no

evidence that any of the jurors disregarded the court's admonitions and read the article. Given these facts, the trial court did not err in denying the appellant's motions on the ground that the publicity had not denied the appellant a fair trial. *State v. Sanchez,* 79 N.M. 701, 448 P.2d 807 (Ct.App.1968).

We have examined the other issues raised by the appellant and find them to be without merit.

### CONCLUSION

For the reasons stated in part I of this opinion, we reverse Mr. Robinson's convictions for the armed robbery of Kinney Shoes, the conspiracy to commit armed robbery, and the murder of Officer Chacon and remand the cause to the district court for a new trial and further proceedings consistent with this opinion. For the reasons stated in parts II and III, we hold that Mr. Robinson was not denied a fair trial and affirm his convictions on the remaining charges.

This opinion is entered after rehearing was granted and is substituted for that opinion upon which rehearing was granted.

IT IS SO ORDERED.

PAYNE, C.J., and GEORGE L. ZIMMERMAN, District Judge, sitting by designation, concur.