762 P.2d 890

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jake DURAN, Defendant–Appellant.**

**No. 17402.**

Supreme Court of New Mexico.

Oct. 12, 1988.

---

604

Jacquelyn Robins, Chief Public Defender, Hollis A. Whitson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Justice.

The defendant was sentenced to life imprisonment plus ten years upon his conviction of first degree murder and armed robbery. He contends there was insufficient evidence to support conviction and that due process was violated because, as a result of prosecutorial misconduct, he was denied his right to a fair trial. Two secondary points are presented in accordance with *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), requiring appointed counsel to set forth contentions urged by the defendant regardless of whether counsel believes they are meritorious and whether such contentions in fact are argued by counsel. Those issues, which concern the trial court's refusal to give an instruction not permitted under the Use Note following SCRA 1986, 14–5150, and a bare contention that defendant's photograph used in a photo array was taken without his permission, are devoid of merit; consequently, we do not address them.

█ The only test recognized by this court to review the sufficiency of the evidence from a jury trial is one inquiring whether substantial evidence, either direct or circumstantial in nature, exists to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of a crime charged. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314, 1319 (1988); *State v. Montoya*, 101 N.M. 424, 425–26, 684 P.2d 510, 511 (1984); *State v. Brown*, 100 N.M. 726, 728, 676 P.2d 253, 255 (1984). The evidence is viewed in a light most favorable to the jury's verdict; all reasonable, permissible inferences are indulged to support it, and all conflicts are resolved in favor of the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319; *Brown*, 100 N.M. at 729, 676 P.2d at 256. An appellate court does not evaluate the evidence to determine whether some hypothesis exists that is consistent with a finding of innocence; it does not weigh the evidence or substitute its judgment for that of the jury. *Sutphin*, 107 N.M. at 130–31, 753 P.2d at 1318–19.

█ The only issue here is identity. The prosecution presented several witnesses to connect defendant with the crime, including one eyewitness and three expert forensic witnesses. That evidence as a whole would support the conclusion that defendant could not be excluded from the class of persons who could have committed the crimes, and it placed the defendant in the victim's neighborhood at the time of the homicide. Defendant did not object to the testimony at trial, and he had an opportunity to cross-examine and attempt to impeach each witness. He also was able to argue his portrayal of the testimony to the jury, and it was within the jury's function and discretion to believe or disbelieve him. Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence. *State v. Tovar*, 98 N.M. 655, 658, 651 P.2d 1299, 1302 (1982).

Defendant's principal claim is that he was denied his right to a fair trial because the prosecution shifted the burden of proof

in trying to prove his guilt by showing that he had no alibi. During its case-in-chief, the prosecution called defendant's aunt Rose Montoya, his only proposed alibi witness, and elicted testimony concerning defendant's shoe size, where he was on the evening of the homicide, and what she had done with the denim jacket he allegedly wore on the night of the homicide. The prosecution then asked Montoya about a prior statement given by her to the police in which she had been asked: "Did he [defendant] ask you to tell the police that you drove him to the Mills?" and she had replied: "He said that I was his only alibi." The question asked at trial was "[D]id the defendant tell you to tell the story about him driving to the Mills' house?" Not only was the question asked at trial a leading question, it also was misleading regarding Montoya's earlier answer.

Defendant insists that the prosecution did not call Montoya to offer any relevant, substantive evidence, but called her solely for the purpose of impeaching her and introducing an otherwise inadmissible hearsay statement. Case law from other jurisdictions supports the proposition that it is entirely inappropriate for the prosecution to call a witness who is favorable to the defendant only to elicit statements made to the witness by a defendant, because such a scheme operates as a subterfuge to avoid the hearsay rule. *See United States v. Johnson,* 802 F.2d 1459, 1466 (D.C.Cir. 1986); *State v. Graham,* 200 Conn. 9, 18, 509 A.2d 493, 498 (1986).

A review of the trial transcript confirms that the prosecution's primary purpose for calling Rose Montoya as its witness was to impeach her credibility. The trial court interrupted the prosecutor shortly after examination of Ms. Montoya began and, outside the presence of the jury, the following colloquy ensued:

THE COURT: Why don't you just ask her the facts. I mean, she doesn't have to know and understand what an alibi is. Just ask her whether or not—if that is what you want to do, but I think it's improper questioning, at this point, about whether she is—has—at this point in this case, there hasn't been any evidence of

her as an alibi witness. He hasn't testified.

MR. BIEHLER: Well, I think she is going to testify as to an alibi witness. * * * At some point in time, I am sure she'll—it will become—she is a hostile witness.

. . . .

THE COURT: Well, up to this point, I think the approach of the District Attorney is inappropriate. I don't think you can show that this witness is biased before she has testified to anything substantive. In other words, if she is—if she says something in a substantive manner that—concerning the facts of this case that would be adverse to the State or whatever, then maybe you could show bias. But you could—you can't start off with your examination of this witness showing that she is biased, and that's what it seems as if you're trying to do, trying to show her relationship to this Defendant, and so on. That she would—that she is a biased witness.

. . . .

Unless she would testify to something which would seem to be inappropriate, then maybe you could impeach her, depending on what she says.

MR. BIEHLER: We will go from the other direction first.

THE COURT: Well, I would think so. I would think you would have to.

MR. BIEHLER: It is my understanding that once she has testified, then it is adverse to the State in this case, that she would, then, be considered to be an adverse witness.

THE COURT: Well, I don't know that I am going to consider her an adverse witness. I don't believe the law requires that she be adjudged adverse or hostile in order for you to impeach her, but I am not going to make any ruling in advance. We'll see how she is.

MR. LEYBA: I would like to make an objection to the improper cross-examination by the State. She—they haven't established that there is anything to im-

peach her with, and he is trying to impeach her before she testifies.

THE COURT: That's the essence of the reason I sent the jury out. I think that's correct. Until she testifies to some factual matter in the case, which might be inconsistent with what she may have given a statement on or whatever, that there is no way you can show her bias.

. . . .

That is a rather strange method of utilizing this witness, from the Court's point of view, calling a defense alibi witness as your own witness to show that she is lying before she even testifies in the court that there is an alibi. There's been no evidence of alibi, yet, at least from her.

MR. LEYBA: Your Honor, I would object to that unless this witness has some testimony that she would give that would be relevant to the facts in issue in the case. I think what the State is attempting to do is discredit his alibi witness before the Defendant even has an opportunity to call her. I may not even call her to the stand. I think it's their method by the prosecution to usurp the Defendant's right to testify or not to testify in this case.

MR. BIEHLER: Your Honor, what we have got in this situation is a witness who the Defendant's attorney claimed, in opening statement, and told to the jury, that this witness would be an alibi witness. The State intends to present her testimony for some substantive things. There are some substantive things that she can tell us for a witness, whether she be for the Defense or for the Prosecution. I will get to those. * * *

Later in the direct examination of the witness, another discussion was held at the bench and out of the presence of the jury:

THE COURT: Do you have anything further?

MR. BIEHLER: Only, Judge, that this witness has tried to provide, on the one hand, is trying to provide an alibi for the Defendant, where he was that night, which is essential to our case, and has made a whole bunch of different statements, and I think the State has an opportunity—or discover an opportunity to impeach her credibility by her relationship with the defendant.

THE COURT: You have been impeaching her credit. I believe, of course, she is trying to, I would suppose, you might say, giving him an alibi, but only because you called her as a witness. The defense hasn't called her yet.

MR. LEYBA: Your Honor, if I may, I would object to the State calling an alibi witness to impeach the alibi unless she has some relevant evidence.

THE COURT: I don't even know if he has determined an alibi. She said she didn't know where he was after 11:15. I will sustain the objection. I think we are getting way, way off base here, and it's rather unorthodox, the whole situation, and six months down the road from now, you might regret a lot of this.

MR. LEYBA: I am going to renew my Motion for Mistrial based on a procedure improperly employed by the State to call the Defense's witness for the only purpose of impeachment. * * * What they are doing is bringing an alibi witness, attempting to badger her before the jury, and I haven't even called her as an alibi witness. I would object to that procedure and ask for a mistrial.

■ If the prosecution elicits relevant, substantive testimony from the witness, it may impeach its witness with prior inconsistent statements about the same matter being testified to at trial. See SCRA 1986, 11–607 (party may impeach its own witness); SCRA 1986, 11–801(D)(1)(a) (prior inconsistent statements are nonhearsay if declarant testifies at trial and is subject to cross-examination); see also State v. Vialpando, 93 N.M. 289, 297, 599 P.2d 1086, 1094 (Ct.App.), cert. denied, 93 N.M. 172, 598 P.2d 215 (1979) (if prior written statement is inconsistent with witness's trial testimony, the prior statement is a nonhearsay written assertion under Rule 801(D)(1)(a)). Furthermore, such nonhearsay evidence can be admitted as substantive evidence to be considered by the jury;

the jury is not restricted to consider the evidence only for impeachment purposes. *See State v. Maestas*, 92 N.M. 135, 144, 584 P.2d 182, 191 (Ct.App.1978).

But the above rules do not operate in the abstract. Montoya's prior statement was hearsay under the definition of SCRA 1986, 11–801(C), because it was "other than one made by the declarant while testifying at the trial." Included in her prior statement, however, was the alleged declaration by Montoya that defendant had told Montoya something she had not included in her trial testimony. Thus, there was hearsay within her hearsay statement. When *Montoya* testified at trial, any prior inconsistent statement made by her was removed from the hearsay rule and could be used substantively to permit the jury to determine whether or not she had driven defendant "to the Mills" on the night in question, but because defendant had not testified, either at that point or ever, the statement allegedly attributed to him by Montoya in her prior statement could not be used as substantive evidence against him. He also was a "declarant" as defined by Rule 801(B) and as illustrated in *Maestas*, but his hearsay statement to Rose Montoya never became admissible, because the condition which would have taken his alleged statement out of the hearsay rule never occurred: he did not testify at trial.

*Maestas* is not to the contrary. There, the victim's out-of-court hearsay statement to the witnesses—her prior inconsistent statement to them—was admissible to impeach her trial testimony denying defendant's identity, and to become substantive evidence against the defendant under the exception of Rule 801(D)(1), because the impeached witness testified at trial. But her prior statement did not contain, additionally, a hearsay statement by defendant. The impeached witness here was Rose Montoya; the validity of her prior statement could be used to impeach her credibility at trial, but its hearsay content of what defendant purportedly had said to her should have been excised or ruled inadmissible—particularly in view of the extended objections by defense counsel and the per-vasive cautioning by the trial court regarding the prosecutor's unorthodox procedure.

Moreover, we have scrupulously read and reread a signed statement given by the witness before trial and admitted for the record, and it appears to us to indicate that on one occasion she had told investigators that she had not driven defendant to the Mills house, and on a later occasion she said she had. Nowhere in the statement, however, do we find an answer agreeing that she had been told by defendant to tell the police that she had driven him to the Mills house. We have quoted above her specific answer to that question as it appears in the statement. Thus, even the question asked by the prosecutor had no foundation in Montoya's prior statement, and was a mischaracterization of what she earlier had said.

It was constitutionally improper, therefore, for the trial court to admit and for the State to elicit Duran's hearsay statement made to Montoya. The State construed Duran's alleged hearsay statement as an admission by defendant of criminal liability, but we conclude that it could be so construed only by a most egregious twist of reasoning; that, instead the purported statement of defendant as posed by the prosecutor was hearsay, and that it was not admissible as an exception under either SCRA 1986, 11–801(D)(1) or—(D)(2). The defendant did not testify, and because his statement was not an admission against penal interest, its admission into evidence approaches a violation of his fifth amendment right not to testify, which also is guaranteed by Article II, Section 15 of the New Mexico Constitution, see *State v. Kendall*, 90 N.M. 236, 239, 561 P.2d 935, 938 (Ct.App.), *rev'd in part*, 90 N.M. 191, 561 P.2d 464 (1977), notwithstanding the fact that the statement might not be incriminating.

The prosecution's conduct in calling the defense's alibi witness for the purpose of impeachment during its case-in-chief was entirely improper. But to establish a due process violation, and thus reversible error, the defendant must demonstrate prejudice. *See State v. Henry*, 78 N.M. 573, 574, 434

P.2d 692, 693 (1967); *Johnson v. Cox*, 72 N.M. 55, 57, 380 P.2d 199, 201 (1963); *see also* SCRA 1986, 11–103(A). We are constrained to hold, therefore, that the trial court's error in permitting the procedure against its own reservations, and even in the absence of specific objection, was harmless; as we have already said, there was sufficient other evidence to convict the defendant. *See Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) (establishing constitutional harmless error). Nevertheless, we sternly admonish the prosecution for its conduct in this instance. The prosecution admitted that its primary purpose for calling the defendant's listed alibi witness was to impeach her credibility. We are strongly convinced, as was the trial court, that the principal objective of the prosecution was to admit Montoya's prior statement containing what the prosecution mistakenly considered to be an admission by the defendant. Although the prosecution elicited some substantive evidence from Montoya, that evidence was cumulative and not inconsistent with her earlier statement. It had no reason to impeach Montoya's alibi testimony until the defendant had presented the alibi and *only* if he had chosen to do so. If alibi evidence were not presented in the defense's case, there would have been no necessity to "destroy," by impeachment, the alibi witness. We consider the prosecution's conduct improper, but because we cannot say that it prejudiced the defendant, it cannot be deemed reversible error.

■ Defendant points out, finally, that in closing argument the prosecution misconstrued the testimony of one of the expert witnesses by characterizing her analysis of hair samples as "consistent" to mean that the samples were "indistinguishable." The argument was not objected to, but its inaccuracy was not a complete fabrication or misrepresentation, and it consequently did not constitute fundamental or reversible error. *See State v. Chavez*, 100 N.M. 730, 734, 676 P.2d 257, 261 (Ct.App.1983), *cert. quashed*, 100 N.M. 689, 675 P.2d 421 (1984). Another witness had testified that the expert had described the samples as "indistinguishable." Although that testimony was hearsay, it was admitted into evidence without objection from the defense. Had the prosecutor paraphased the expert by describing the hair comparison as "identical," however, he would have committed a "calculated, rank misrepresentation," *see People v. Linscott*, 159 Ill.App.3d 71, 81, 111 Ill.Dec. 8, 14, 511 N.E.2d 1303, 1309 (1987), *cert. granted*, 117 Ill.2d 549, 115 Ill.Dec. 405, 517 N.E.2d 1091 (1987), which, according to *Linscott*, would have required a new trial.

Despite the errors of overenthusiasm committed by the State in its presentation and summation of the case, the defendant has not shown that he was prejudiced. Absent demonstrable prejudice from prosecutorial misconduct, a due process violation fails and thus there is no reversible error. *State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984).

For the foregoing reasons, the verdict and judgment in the district court are AFFIRMED.

IT IS SO ORDERED.

SOSA, Senior Justice, concurs.

STOWERS, J., concurs in result.