793 P.2d 268

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**James Craig LITTERAL, Defendant–Appellant.**

**No. 18068.**

Supreme Court of New Mexico.

June 18, 1990.

Taylor, Gaddy, Rakes and Hall, Leon Taylor, Daniel Rakes, Albuquerque, for defendant-appellant.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Defendant, James Craig Litteral, was found guilty by a jury and convicted of first degree murder of William Douglas

McDougal, contrary to NMSA 1978, Section 30–2–1(A)(1) (Repl.Pamp.1984). He was sentenced to life imprisonment, with a one-year firearm enhancement to be served concurrently. *See* NMSA 1978, § 31–18–14 (Repl.Pamp.1987) (sentencing authority for capital felony) and § 31–18–16(C) (Repl. Pamp.1987) (alteration of basic sentence for use of firearm). A mistrial was declared at the first trial, the court finding manifest necessity based upon improper impeachment of the state's key witness regarding prior convictions more than ten years old. All of defendant's motions to dismiss and for a new trial were denied. We affirm the conviction and sentence.

On appeal, defendant raises the following issues:

(1) whether the district court abused its discretion in excluding impeachment evidence of the state's main witness and in declaring a mistrial based on the existence of manifest necessity when defendant attempted to inquire about prior convictions more than ten years old;

(2) whether the district court abused its discretion in admitting evidence concerning defendant's involvement with drugs and weapons;

(3) whether cumulative error deprived defendant of a fair trial;

(4) whether the district court abused its discretion in allowing the state to examine defendant's wife and mother;

(5) whether a sufficient factual basis existed to establish the court's jurisdiction;

(6) whether sufficient physical evidence existed linking defendant to the scene of the crime for the jury to find him guilty beyond a reasonable doubt;

(7) whether our jury instruction regarding a unanimous verdict and the jury's duty to consult is unconstitutional; and,

(8) whether the district court abused its discretion in denying defendant's motions for a new trial based on newly discovered evidence.

A week before the killing, defendant planned to be in Colorado and asked the apartment maintenance man to watch his apartment. During this time, the maintenance man had been in and out of defendant's apartment to work on a sewer line problem involving adjacent apartments. It was not until the end of the week that he noticed a .9 mm. handgun on the counter. The maintenance man testified the gun was not there the following Monday morning, the day of defendant's return. Upon defendant's arrival home, the maintenance man inquired whether anyone had a key to his apartment since it appeared someone had been in the apartment during his absence. Defendant indicated his mother and the victim each had a key to the apartment. The victim had been seen near defendant's apartment during defendant's absence.

The state sought to prove defendant killed the victim with one round fired from defendant's .9 mm. handgun, alleging that defendant and the victim had a dispute involving their methamphetamine manufacturing operation. The state contended the motive behind the killing involved money the victim allegedly owed defendant. The maintenance man testified he overheard a telephone conversation in which defendant, in a loud voice, accused the victim of taking his chemicals and threatened to kill the victim if he did not pay money he allegedly owed. The conversation allegedly took place within ten minutes of defendant's return from his trip. Further testimony indicated defendant left the premises immediately after the conversation. That afternoon the Albuquerque police were called to the victim's house to investigate his death. The maintenance man testified he had no motive to lie or testify falsely against defendant.

The defense hypothesized the maintenance man had stolen the gun and concocted the telephone threat to divert suspicion from himself. During cross examination, defense counsel abruptly inquired into past convictions of the witness, the latest being twenty-five years prior. After a bench conference, the court allowed further questioning of the witness, while reserving a ruling on the issue of the prior convictions until that afternoon.

At a hearing held outside the presence of the jury, the state moved for a mistrial arguing that defense counsel improperly

questioned the state's witness concerning convictions over ten years old in violation of SCRA 1986, 11–609(B). Defendant argued the state invited an attack on the witness's credibility, and further submitted that the fact of the prior crimes was admissible for purposes other than impeachment under Rule 11–404(B), evidence bearing on the motive of a witness, or Rule 11–608(B), specific instance of conduct probative of truthfulness.

The court again deferred ruling until the following morning to allow the parties time to research the issue. The court asked the prosecutor to consider whether an admonition or curative instruction would be appropriate under the circumstances. On the following morning, the court ruled the prior convictions were too remote in time to be admissible and found the prejudice to the state could not be cured by cautionary instructions. The court declared a mistrial based on manifest necessity arising from prejudice to the state and immediately impaneled a new jury for the second trial.

*Mistrial*

Defendant claims the court abused its discretion in refusing to admit evidence of the prior convictions and that his second trial subjected him to double jeopardy. He alleges the court failed to explore alternatives to mistrial, like curative instructions, to correct any prejudice arising from defense counsel's questioning. Further, defendant argues, by limiting his examination of the state's witness, the court deprived him of the right to develop and present his defense, to confront an adverse witness, and to due process of law.

Defense counsel denied having knowledge of the age of the prior convictions despite the fact that the questions were posited with specific reference to the years 1957–1963. When asked by the court about a good-faith basis for asking the question, defense counsel replied, "my private investigator researched it and found out—tracked his history and found out that he had these convictions." From this response and from the way defense counsel had framed his questioning, the court inferred defense counsel knew when the convictions had taken place. Moreover, regardless of such knowledge, Rule 11–609(B) establishes an absolute ten-year limit on the use of a prior conviction. *See* SCRA 1986, 11–609, committee commentary.

Evidence inadmissible for one purpose may be admissible for other purposes under a different rule of evidence. *See State v. Omar–Muhammad*, 105 N.M. 788, 793, 737 P.2d 1165, 1170 (1987). Assuming evidence of the prior convictions otherwise admissible the record in the present case fails to establish an abuse of discretion in the trial court's refusal to admit this evidence under either Rule 11–404(B) or Rule 11–608(B). *See State v. Smith*, 92 N.M. 533, 537, 591 P.2d 664, 668 (1979) (admission of evidence is within sound discretion of trial court and its ruling will be upheld unless there is showing of abuse of discretion). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983). We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason. *See State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct. App.1970). We agree with the trial court that "acts that are ... 25 and 29 years old ... are in no way relevant to behavior in 1987." We thus disagree with defendant's contention that he was deprived the opportunity to test the credibility of the key witness against him in violation of the sixth amendment. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (defendant's constitutional right to confront evidence places limits on trial court's ability to prevent impeachment of prosecution witness by means of prior convictions); *United States v. Ferguson*, 776 F.2d 217 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986) (right to cross-examination under *Davis* does not extend to stale convictions of witness).

In some instances, the double jeopardy clause protects a criminal defendant

against being retried when the criminal proceeding is aborted before a final judgment was obtained. *State v. Saavedra,* 108 N.M. 38, 41, 766 P.2d 298, 301 (1988). When the first jury is sworn jeopardy attaches and a defendant cannot be retried unless the declaration of a mistrial is based upon reasons of manifest necessity. *Id.* However, "[a]s the term 'manifest necessity' implies, the protection against retrial is not absolute when the trial process has been stopped short of a final judgment." *Id.*

When the underlying issue involves possible jury bias, a reviewing court must afford substantial deference to the trial court's ruling. *Id.* at 42, 766 P.2d at 302. As discussed above, the court here first looked to whether the evidence was admissible and determined that the prior acts were far too remote in time to be probative of truthfulness. The court properly concluded that, because the evidence concerned the state's main witness, it had been prejudiced to the point where an admonition or a curative instruction would not have cured the harm that already had been done. *Cf. State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966) (reversal of conviction required when trial court's admonition did not cure effect of prosecutor's question concerning defendant's prior convictions, which question was framed in improper manner and known by prosecutor to be irrelevant to issues at trial).

We believe the result reached is in accord with the principle announced in *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1981), that courts should be most reluctant to declare a mistrial when the defendant is not the movant. The same safeguards a prosecutor must exercise when questioning an accused about prior convictions also govern the impeachment of the credibility of a witness other than the accused. *State v. Robinson,* 99 N.M. 674, 676, 662 P.2d 1341, 1343, *cert. denied,* 464 U.S. 851, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983). Here, the second trial did not create an unfairness to defendant, and, as stated by the Supreme Court in *Arizona v. Washington,* "[a de-

fendant's] valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." 434 U.S. 497, at 505, 98 S.Ct. 824, at 830, 54 L.Ed.2d 717 (1978).

Defendant cites *Callaway v. State,* 109 N.M. 416, 785 P.2d 1035 (1990), in support of his position. However, in *Callaway* the trial judge *sua sponte* ordered a mistrial over opposition from both parties. There, the basis for the mistrial was prejudicial testimony injected into the trial by a witness who gave an unsolicited and unresponsive answer to an apparently legitimate question asked by defense counsel. The trial judge was found to have reacted angrily, misdirecting "[i]ts justifiable displeasure with the witness ... toward [defendant]." 109 N.M. at 417, 785 P.2d at 1036. Unlike the judge in *Callaway,* the trial judge in the instant case demonstrated a sensitivity to double jeopardy concerns by exercising careful consideration of the issue in a calm, reflective, and thoughtful manner.

### Evidence

Defendant claims the admission of the following evidence was an abuse of discretion: (1) his fingerprints on bottles found in the victim's car three months before the killing, (2) a plastic bag containing methamphetamine found in a car registered to defendant's father, (3) a sawed-off shotgun found in the home of defendant's parents, (4) a handgun and weapons' paraphernalia seized from defendant's storage locker, and (5) testimony by defendant's wife and mother concerning an alleged methamphetamine manufacturing operation on property owned by defendant's parents. Defendant argues the probative value of this evidence was minimal and unfairly prejudiced him by linking him to guns and other evidence unrelated to the instant offense. However, our review of the record reveals no abuse of discretion by the trial court in admitting any of the challenged evidence. The evidence of drugs, paraphernalia, and drug connections be-

tween defendant and the victim were probative and relevant to the establishment of a motive for the killing, while the evidence of weapons was probative and relevant to show defendant's familiarity with guns.

Defendant also claims the admission of certain testimony and exhibits relating to law enforcement reconstruction, testimony elicited by the state during redirect examination of its expert witness in forensic pathology, and the prosecutor's allegedly impermissible inferences during closing argument, considered cumulatively, constitute fundamental error. A thorough review of the record and defendant's claimed errors and points, leads us to conclude there was no error in the admission of the evidence, and, therefore, no accumulation of irregularities or errors that denied defendant his right to a fair trial.

■ Similarly, we find no merit to defendant's argument that reversible error occurred when the state examined an alibi witness, defendant's wife, with the alleged sole purpose of impeachment. Defendant mistakenly claims that, at the time defendant's wife was called by the state, no evidence of an alibi had been introduced. The record establishes that during direct examination defendant's wife was not questioned about the timing of their return to Albuquerque. Rather, this evidence initially was elicited during defendant's cross-examination, making the scope of the state's questioning on redirect examination proper. *See Wood v. Dwyer*, 85 N.M. 687, 515 P.2d 1291 (Ct.App.1973) (witness on redirect examination may explain matters made subject of cross-examination). Accordingly, the trial court did not abuse its discretion in allowing the evidence.

■ Further, defendant alleges the state should not have been allowed to impeach his mother with statements she allegedly made to Detective Romero. Arguably this issue comes within the purview of *State v. Duran*, 107 N.M. 603, 762 P.2d 890 (1988), wherein the prosecutor's primary purpose for calling defendant's alibi witness was to elicit statements made to the witness by defendant. As in the instant case, defendant in *Duran* failed to testify in his own

defense. However, finding this testimony not rising to the level of prejudicial error, we reach the same result as in *Duran*, and rule any error by the trial court in allowing the testimony was harmless. *See id.* at 609, 762 P.2d at 896.

■ Defendant next alleges that the evidence of proper jurisdiction was insufficient to overcome his motions for directed verdict of acquittal. However, jurisdiction is satisfied if the trier of fact can infer from the evidence that the crime occurred in New Mexico. *State v. Mirabal*, 108 N.M. 749, 779 P.2d 126 (Ct.App.), *cert. denied*, 108 N.M. 713, 778 P.2d 911 (1989). At trial, the evidence showed that the murder was committed at a house located in Albuquerque and that the investigation was conducted by members of the Albuquerque Police Department. From this, we believe it was reasonable for the trier of fact to infer that the crime for which defendant was charged occurred in Albuquerque.

■ Finally, defendant contends the record was deficient regarding physical evidence linking him to the scene of the crime, and, therefore, a jury could not have found him guilty beyond a reasonable doubt.

The only test recognized by this court to review the sufficiency of the evidence from a jury trial is one inquiring whether substantial evidence, either direct or circumstantial in nature, exists to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of a crime charged.

*State v. Duran*, 107 N.M. at 605, 762 P.2d at 892. We view the evidence in a light most favorable to the jury's verdict; all reasonable, permissible inferences are indulged to support it, and all conflicts are resolved in favor of the verdict. *Id.* Our review of the record reveals that the trier of fact could conclude beyond a reasonable doubt that the defendant was guilty of a willful, deliberate and premeditated killing. Because evidence in support of a conviction is circumstantial does not mean it is not substantial evidence. *Id.*

*Jury Instruction*

█ Defendant claims the trial court's failure to adopt his proposed instruction on the jury's duty to consult denied him a fair trial. Defendant's proposed instruction deviated from our uniform instruction by inserting language regarding the state having the burden of proof. He argues our general unanimity instruction unconstitutionally shifts the burden of proof to the defendant to prove his innocence. We believe, however, that the instruction given is sufficient to guarantee a unanimous verdict as to all specifications required to support the conviction.

> This instruction makes clear that each individual juror is to maintain and uphold his or her own convictions when deliberating on any [verdict]. It specifically states that the individual jurors should not be pressured into changing their opinions simply because their fellow jurors believe that a certain [verdict] should be made.

*State v. Compton,* 104 N.M. 683, 694, 726 P.2d 837, 848 (1986). The general instruction suffices to instruct the jury that they must be unanimous on whatever specification they find to be the predicate of the guilty verdict. Thus, we find no error.

*Motion for New Trial*

█ A motion for a new trial filed under SCRA 1986, 5–614, on the basis of newly discovered evidence must meet six requirements: (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *State v. Fero,* 107 N.M. 369, 758 P.2d 783 (1988). We will not disturb the trial court's denial of a motion for a new trial unless the ruling is arbitrary, capricious or beyond reason. *Id.*

█ Defendant alleges a factual similarity to *State v. Volpato,* 102 N.M. 383, 696 P.2d 471 (1985), in which a witness to the crime stepped forward after the conviction to relieve her conscience and corroborated the defendant's testimony. Defendant claims that witness Lee Griffin, who was out of town during the trial, could have corroborated certain impeached testimony of his wife concerning the cause of defendant's hand wound. Despite the assertion that the witness displayed a "deliberate lack of cooperation with the defense," defendant claims he actively assisted his defense in trying to convince her to contact his defense counsel. He cites *State v. Lucero,* 90 N.M. 342, 563 P.2d 605 (Ct. App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977), for the proposition that his reasonable diligence could not have secured the witness's testimony at trial, and it was error for the court to deny his motion.

Defendant also claims another witness could have corroborated defendant's alibi as testified to by his wife relating to the time period in which they returned from their out-of-town trip. Although the court found that this witness's testimony was not available to the defense at the first trial on the merits, it also determined that the testimony was indefinite and added nothing more than already had been presented. Evidence that is merely cumulative does not provide a sufficient basis for the granting of a new trial based upon newly discovered evidence. *Volpato,* 102 N.M. at 384, 696 P.2d at 472. Likewise, with regard to the testimony of witness Griffin, . . . . it was also cumulative and probably would not have changed the result of the trial. The jury heard from three witnesses concerning defendant's hand wound. Consequently, we find no abuse of discretion in the trial court's denial of either of defendant's motions for a new trial.

Based upon the above, we cannot say that defendant was unfairly prejudiced nor denied a fair trial. Accordingly, the conviction and sentence are affirmed.

IT IS SO ORDERED.

RANSOM and WILSON, JJ., concur.