IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-040

Filing Date: October 27, 2011

Docket No. 32,234

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

JERRY TRUJILLO, JR.,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Charles W. Brown, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jacqueline L. Cooper, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender

for Respondent

## OPINION

**BOSSON, Justice.**

**{1}**    In *State v. Williamson*, 2009-NMSC-039, 146 N.M. 488, 212 P.3d 376, we advised district judges reviewing a search warrant after the fact to defer to the judgment and reasonable inferences of the judge who issued the warrant "if the affidavit provides a substantial basis to support a finding of probable cause." *Id.* ¶ 29. In the case before us, we once again review an order suppressing evidence obtained pursuant to a search warrant, and once again we emphasize that "[a] reviewing court should not substitute its judgment for that of the issuing court." *Id.* The Court of Appeals having upheld the suppression order, we now reverse and remand to the district court for further proceedings.

**BACKGROUND**

{2}     The following facts come directly from the State's affidavit in support of the search warrant, upon which the district judge relied in finding probable cause to issue the warrant. We set forth those factual assertions in some detail to provide the context necessary for our review of the probable cause determination.

{3}     On September 10, 2007, a detective with the Bernalillo County Sheriff's Office, with over 10 years of law enforcement experience, was asked to respond "to an address" to investigate allegations that a teenage girl was being molested by a male family member. "Upon arrival at the address," the detective made contact with the girl, identified in the affidavit as J.J., age 15.

{4}     J.J. told the detective that after she and her brother were removed from her mother's custody by the New Mexico Children, Youth and Families Department, they were adopted by her grandmother, Gloria Jaramillo, and her step-grandfather, Jerry B. Trujillo, Sr. Gloria Jaramillo and Jerry B. Trujillo, Sr. were married and had two children of their own, one of whom was identified as Jerry Trujillo, Jr., age 19, Defendant in this case. J.J., her brother, her grandmother and step-grandfather, and Defendant all lived at the same residence.

{5}     J.J. explained how, over a period of time, Defendant wrote her letters "asking her for sex." Even though she felt like she was being "sexually harass[ed]," J.J. finally gave in to Defendant's demands. J.J. told the detective that Defendant had anal sex with her approximately three times "in [his] bedroom." She also told the detective that Defendant would "plac[e] his hand down her pants" and "have her touch his penis and 'play' with it." These incidents occurred five or more times over the course of 15 months.

{6}     Defendant also showed J.J. "pornographic magazines with pictures of 'naked men and women.'" J.J. told the detective that Defendant "kept the magazines under his mattress in his room, and in the bathroom." In addition to the magazines, J.J. stated that Defendant also showed her pornography on his computer. J.J. told the detective that "these incidents took place when her brother was at work or school, her grandmother was not at home, and her grandfather was either not home, or not watching" them.

{7}     When asked about Defendant's letters to her, J.J. told the detective that she had destroyed most of them, but did give one to a friend for safekeeping. The detective was able to recover that letter, which was reproduced, at least in part, in the affidavit.

{8}     J.J. also identified a cousin who may also have been molested by Defendant. The detective then interviewed the cousin, identified in the affidavit as D.M., who stated that Defendant "had touched her numerous times . . . while she, J.J., and J.J.'s brother were watching television in [Defendant's] room."

2

**{9}** When asked how long this had been going on, D.M. responded, "[s]ince J.J. went to live with [Defendant] and his parents." The detective "asked D.M. why she stopped going to the *Trujillo home*, and she stated, '[w]ith your uncle touching you, you wouldn't wanna [sic] go over there either.'" (Emphasis added.) D.M. also told the detective that "[Defendant] would show her pornographic magazines." "D.M. stated the magazines were kept under [Defendant's] bed and contained pictures of 'naked girls.'"

**{10}** Based on the interviews with J.J. and D.M., the detective prepared an affidavit and obtained a search warrant from a district judge (issuing judge) based on that affidavit. Each page of the affidavit is captioned: "STATE OF NEW MEXICO VS. 1208 Juanita SW, Albuquerque, NM 87105." The affidavit begins with the detective stating that he "has reason to believe that the following described residence contains evidence of crimes." (Emphasis omitted.) The affidavit then describes 1208 Juanita SW in such great detail that it was apparent the officer had personally observed the residence. He describes such details as the color of different pieces of trim, the layout of the windows, and the location and types of trees in the yard.

**{11}** After detailing the allegations discussed above, the affidavit concludes by describing specific pieces of evidence to be seized. It states that the detective has "reason to believe [Defendant] may have letters detailing some of his activity with J.J." The affidavit also states that the detective has "reason to believe [Defendant] has possession of the pornographic magazines he showed to" the alleged victims, "which he keeps under his bed, or beneath his mattress." Finally, the affidavit concludes by requesting "this search warrant be granted in order to examine *the residence* for any and all evidence which may provide investigators additional information in this case." (Emphasis added.)

**{12}** Based upon the affidavit, the issuing judge found probable cause and issued the warrant. After the search was conducted and evidence, including a pornographic magazine and a letter written between Defendant and J.J., was collected, Defendant filed a motion to suppress physical evidence. The motion was based on a lack of an express nexus between the criminal activity described in the affidavit and 1208 Juanita SW, the actual address to be searched. While the narrative in the affidavit contains references to "an address" or "the residence" or "the Trujillo home," at no point does the affidavit explicitly state that "the residence" and 1208 Juanita SW are one and the same, that 1208 Juanita SW is the place where these events occurred, or that 1208 Juanita SW is where the evidence can be found.

**{13}** Defendant claimed that the search violated his rights under both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. A second district judge, to whom the trial was assigned (reviewing judge), granted Defendant's motion and suppressed all of the evidence obtained in the search. The State appealed and the Court of Appeals affirmed in a memorandum opinion. *State v. Trujillo*, No. 29,870 (N.M. Ct. App. Jan. 13, 2010). We granted certiorari and now reverse. *State v. Trujillo*, 2010-NMCERT-003, 148 N.M. 560, 240 P.3d 15.

3

**DISCUSSION**

**Probable Cause Required for a Search Warrant**

**{14}** The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Except in the case of "a few specifically established and well-delineated exceptions," before conducting a search, the Fourth Amendment requires police to obtain a warrant issued by a judge or magistrate. *Katz v. United States*, 389 U.S. 347, 357 (1967), *superceded by statute as stated in United States. v. Koyomejian*, 946 F.2d 1450, 1455 (9th Cir. 1991).

**{15}** Similarly, Article II, Section 10 of the New Mexico Constitution provides that "no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause." Both the United States Constitution and the New Mexico Constitution require a showing of probable cause prior to the issuance of a search warrant. *See Williamson*, 2009-NMSC-039, ¶ 14.

**{16}** "Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place, or that evidence of a crime will be found [in that location]." *State v. Evans*, 2009-NMSC-027, ¶ 10, 146 N.M. 319, 210 P.3d 216. "Put another way, before a valid search warrant may issue, the affidavit must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *Id.* ¶ 11 (internal quotation marks and citation omitted). "There are no 'bright line, hard-and-fast rules' for determining probable cause, but the degree of proof necessary to establish probable cause is 'more than a suspicion or possibility but less than a certainty of proof.'" *Id.* (quoting *State v. Nyce*, 2006-NMSC-026, ¶ 10, 139 N.M. 647, 137 P.3d 587, *overruled in part on other grounds by Williamson*, 2009-NMSC-039 (expressly disavowing the de novo standard of review)).

**Standard of Review**

**{17}** Recently, in *Williamson*, this Court resolved a conflict in our caselaw regarding the proper standard of review for challenges to search warrants under Article II, Section 10 of the New Mexico Constitution. *Williamson*, 2009-NMSC-039, ¶¶ 19-30. In that case, we clarified that "an issuing court's determination of probable cause should not be reviewed de novo but, rather, must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." *Id.* ¶ 1. "A reviewing court should not substitute its judgment for that of the issuing court." *Id.* ¶ 29. Rather, it is the reviewing judge's duty to "determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* This same standard is used to review challenges to search warrants brought under the Fourth Amendment to the United States

4

Constitution. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

**{18}** "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Williamson*, 2009-NMSC-039, ¶ 30. The United States Supreme Court reasoned that "[a] deferential standard of review is appropriate to further the . . . strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). A deferential stance "to the warrant process encourages police officers to procure a search warrant." *Williamson*, 2009-NMSC-039, ¶ 28. This in turn provides "a layer of protection from unreasonable searches and seizures" without a warrant. *Id.* (internal quotation marks and citation omitted). Accordingly, "'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Upton*, 466 U.S. at 734 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

**{19}** This standard "does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause." *Williamson*, 2009-NMSC-039, ¶ 30. Rather, "[i]f, after reviewing the affidavit as a whole, the direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, does not support the issuing court's determination of probable cause, then the search is invalid and unreasonable." *Id.* (internal quotation marks and citation omitted). But, if the factual basis for issuing the warrant is sufficiently detailed in the affidavit, "and the issuing court 'has found probable cause, the [reviewing] courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner.'" *Id.* (quoting *Ventresca*, 380 U.S. at 109). As stated previously, under a deferential standard the reviewing judge does not substitute his or her judgment for that of the issuing judge.

**The Necessary Nexus Between the Affidavit and the Place to Be Searched**

**{20}** There must be sufficient detail in the affidavit to show a nexus between the evidence sought and the particular place being searched. *See Evans*, 2009-NMSC-027, ¶ 24. This link "must be made by the [issuing] judge or magistrate on a case-by-case basis." *Id.* "The fundamental inquiry is whether there is probable cause to believe there will be evidence of a crime *at a particular location*." *Id.* ¶ 25. Finally, when considering whether an affidavit established probable cause to issue a search warrant, review is limited to the four corners of the document. *Williamson*, 2009-NMSC-039, ¶ 31.

**{21}** Returning to the case before us, we recall that the address to be searched, 1208 Juanita SW, was listed on each page of the affidavit. The affidavit describes in graphic detail numerous acts of sexual molestation, and evidence to be found in proof thereof, at a place variously described as "the residence," "the Trujillo home," and "the address," with the only address listed in the affidavit being 1208 Juanita SW. But the affidavit never explicitly connects the two. Accordingly, we must decide whether the lack of an explicit

5

nexus in the affidavit between the place to be searched, 1208 Juanita SW, and the place of the evidence, "the Trujillo home," the "residence," and "the address" is determinative.

{22} We are not without guidance in our inquiry. We agree with the United States Court of Appeals for the Seventh Circuit that the failure to explicitly state in a search warrant affidavit that the listed address is that of the defendant "is not a fatal flaw," at least not always, as long as a reasonable inference to that effect can be drawn from the facts detailed in the affidavit. *United States v. Hunter*, 86 F.3d 679, 681 (7th Cir. 1996).[1] The facts of *Hunter* are quite similar to those of the instant case. Probable cause that the defendant committed bank robbery was not at issue, as the defendant turned himself in to the authorities three days before the search warrant issued. *Id.* at 681-82. An attachment to the affidavit described the place to be searched as "the residence at 510 Palace Court, Schaumburg, Illinois," while the affidavit only referred to "Hunter's residence" without linking the residence to the address. *Id.* at 682 (internal quotation marks omitted). However, the affidavit "made no reference to any other place connected to Hunter." *Id.* The court ruled that "[a]lthough Hunter correctly notes that the affidavit did not explicitly state that 510 Palace Court was his residence, that is the only logical conclusion supported by a common-sense reading of the affidavit." *Id.*

{23} The most significant of the similarities between *Hunter* and the case before us is that both affidavits only describe one place connected to the suspects. In each case, the affidavit lists the address to be searched, and then the narrative proceeds to discuss one location in detail. And, in each case, no express statement connects the address to be searched with the address described where evidence can be found. Nonetheless, that connection is "the only logical conclusion supported by a common-sense reading of the affidavit." *Id.*

{24} Such an inference is even more reasonable in the case before us. The same address is listed at the top of each page of the affidavit; all of the crimes described in the instant case occurred in Defendant's bedroom; some of the specific items of evidence are expected to be found under Defendant's bed or mattress. The detective had two separate victims tell him precisely where in his bedroom Defendant kept the pornographic magazines that were the object of the search. The issuing judge had a more solid foundation from which to draw inferences than in *Hunter*, where the crimes occurred away from the suspect's residence and the affiant wished to search for evidence that might have been brought back to the suspect's residence.

{25} Barring a hypertechnical reading of the affidavit, an inference that the residence described is the same as the residence where evidence can be found, is much more

---

[1]We are aware that the Court in *Hunter* reviewed the affidavit in that case de novo. 86 F.3d at 681. We decline to comment on the adoption of such a standard by the Seventh Circuit, and merely point out this fact so as not to create any confusion in our own law that the substantial basis standard of review governs.

reasonable than its opposite—that the residence described in such painstaking detail actually has no relationship to the events of this case. We think the reviewing judge was well within his rights to draw the rational inference and avoid the irrational. Understandably, the reviewing judge was concerned that "[t]here [was] no indication in the affidavit that . . . Defendant lived at this address, that he was presently at that address or had been at that address sometime in the past." However, considered in context, what else could the detective have intended to say? More significant still, what other inference could the issuing judge reasonably have come to?

**{26}** Simply put, it is a stretch to draw the opposite inference; one must work hard *not* to infer that 1208 Juanita SW is "the residence" where all these criminal acts occurred and where incriminating evidence can be found. Deference is due under the circumstances, and his decision to issue the warrant is supported by a substantial basis in the record.

**{27}** Defendant argues that *State v. Herrera*, 102 N.M. 254, 694 P.2d 510 (1985) supports suppression in this case. In *Herrera*, this Court found insufficient probable cause to determine that the residence to be searched was in fact the defendant's residence. *Id.* at 258, 694 P.2d at 514. The affidavit in that case provided "[a] thorough description of the residence to be searched," and later referred to it as "his residence" or the "[d]efendant's residence." *Id.* at 257, 694 P.2d at 513 (emphasis omitted). But, there was no statement of foundation explaining why the affiant thought the residence was the defendant's. *Id.* The only supporting information in the affidavit was that the defendant was apprehended driving away from the "'general direction'" of the described residence, and there were "unfrozen, fresh tire tracks at the described residence." *Id.* at 258, 694 P.2d at 514. This Court concluded that "merely because a residence is described in even minute detail does not provide a magistrate with the necessary evidence to infer that a suspect makes such residence his home." *Id.* "The affidavit merely stated the conclusion that the described residence was Herrera's home." *Id.* As a result, "[t]here was virtually no evidence presented in the affidavit from which a magistrate could properly infer that the place to be searched was Herrera's residence." *Id.*

**{28}** In contrast with *Herrera*, the affidavit in this case is sufficiently detailed to allow the issuing judge to reasonably infer that Defendant in fact lives at the described residence, the one listed as an address where all the evidence will be found. All of the alleged criminal conduct in the instant case occurred in the same residence, in Defendant's bedroom, whereas the criminal conduct in *Herrera* occurred at a nightclub away from the defendant's home. From the affidavit, we know that both J.J. and D.M. know where Defendant lives, with J.J. residing in the same house, while in *Herrera* there was no indication that any of the eyewitnesses who identified the defendant actually knew where he lived. Reading *Herrera* even today, we are left to speculate why the affiant picked that house as the defendant's residence.

**{29}** Additional corroboration was not necessary in this case. Again, it is clear from the affidavit that J.J. lived with Defendant. It is equally clear that D.M. knew were Defendant

7

lived. The detective even asked D.M. why she stopped going over to the "Trujillo home." This is more than an investigating officer's mere unsupported assumption that the residence to be searched is that of the defendant, as was the case in *Herrera*. Rather, the affidavit details the factual foundation for exactly how the detective concluded that Defendant resided at 1208 Juanita SW and why incriminating evidence would be found at that particular place.

**{30}** Defendant argues that "[i]t would be inappropriate to search based on the word of a 15 year old girl that the address is the one listed," and "there is no way for an issuing court to know whether the officers in a case like this one had verified the girl's statement." First, we disagree with the argument that a 15-year-old girl is not qualified to identify where and with whom she lives. Second, it is clear from the affidavit that the detective in this case independently verified J.J.'s allegations. According to the affidavit, and prior to applying for the search warrant, the detective was able to obtain a letter written between J.J. and Defendant. This letter not only directly corroborates her allegations, but documents the abuse of D.M. as well.

**{31}** In sum, the difference between *Herrera* and Defendant's case is that the affidavit in *Herrera* was wholly lacking any foundational information to allow the inference that the residence described was in fact the defendant's residence. In contrast, the affidavit in this case lacked only a statement of the obvious—that "the residence" referred to on the final page of the affidavit, the one in which the alleged crimes occurred and which evidence from under Defendant's bed can be found, is identified as 1208 Juanita SW—the address that appears on every page of the affidavit. The affidavit laid an adequate foundation for how Defendant's address was determined; the affidavit just lacked the final link in the chain. While this link is a material fact, it "need not be proved by direct evidence. It is sufficient if there is evidence from which the fact can properly be inferred." *State v. Snedeker*, 99 N.M. 286, 290, 657 P.2d 613, 617 (1982).

**{32}** This same discussion equally applies to *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), upon which Defendant also relies. Again, lacking in *Gonzales* was any foundational information that would permit an inference that the described residence was that of the defendant or contained evidence of a crime. *Id.* at 1227-28. Like *Herrera*, the actual crime occurred away from the residence, no information linked the defendant to the residence, and the only link between the residence and the evidence to be seized was a conclusory statement by the affiant. *Gonzales*, 399 F.3d at 1230. As explained above, that situation is vastly different from the one presented in this case.

**{33}** We acknowledge that this is a close case. Had the issuing judge denied the search warrant based on the same affidavit, we would likely uphold that decision as well. Here, we sustain the search because some deference is due the decision of the issuing judge[2] and because, in accordance with sound policy, close cases in this area are to be decided in favor

---

[2]Notably, the dissent makes no reference to this deference.

of our pronounced preference for warrants.

**Defendant's Jurisdictional Argument Is Moot**

**{34}** Defendant also argues that the State filed its Petition for Writ of Certiorari after the thirty-day deadline and that, as a result, this Court lacks subject matter jurisdiction and, thus, must be quashed. However, this Court on October 5, 2009, issued its Notice granting the State's explicitly *unopposed* Motion to accept its Writ of Certiorari as timely, and as a result the issue is moot. *See N.M. Bus Sales v. Michael*, 68 N.M. 223, 226, 360 P.2d 639, 641 (1961).

**CONCLUSION**

**{35}** We reverse the Court of Appeals and remand to the district court for further proceedings in accordance with this Opinion.

**{36}    IT IS SO ORDERED.**

_____
    **RICHARD C. BOSSON, Justice**
**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

**EDWARD L. CHÁVEZ, Justice (dissenting)**

**CHÁVEZ, Justice (dissenting).**

**{37}** Before the government is constitutionally authorized to physically invade the privacy and sanctity of a person's home based on a search warrant, the affidavit in support of the search warrant must, at a minimum, provide reliable facts and circumstances to establish that it is reasonably probable that the place to be searched presently contains evidence of a crime. Simply describing the place to be searched is not enough to fulfill this requirement. The affidavit must contain information that establishes why the place that is described in detail presently holds evidence of a crime. It could be that the crime occurred in the home of the accused and the affidavit contains reliable facts and circumstances to explain why the affiant

9

believes the place to be searched is the defendant's home and presently has evidence of the crime. Merely because a residence is described in detail does not provide the judge who reviews the affidavit with the essential evidence to infer that an accused actually lives at the residence. *State v. Snedeker*, 99 N.M. 286, 292, 657 P.2d 613, 619 (1982).

{38}    In this case, the warrant issued for the search of 1208 Juanita Street, S.W. in Albuquerque, New Mexico was described in detail. Among the items to be seized was "[a]ny and all documentation that may show possession or ownership of said residence." As conceded by the prosecution during the hearing on Defendant's motion to suppress, the affidavit does not provide any direct evidence that the crime occurred at 1208 Juanita Street or that Defendant lived or lives there. Instead, the affidavit contains information that the affiant was dispatched "to an address" where he interviewed a 15-year-old female who claimed that she had been molested by her step-grandfather over the course of four years. She also alleged that her 19-year-old uncle had molested her in his bedroom over the last 15 months, showed her pornographic magazines he kept under his mattress, and showed her "porn" on his computer. The trial judge was unwilling to infer from these facts that Defendant resided or presently resides at 1208 Juanita Street or that the alleged events occurred there.

{39}    The Court of Appeals affirmed the trial court. In my opinion, both courts correctly applied existing New Mexico law on the subject. Setting aside time considerations, the affidavit must establish a sufficient nexus between (1) criminal activity, (2) the things to be seized, and (3) the place to be searched. In *Snedeker*, this Court held that it would allow a magistrate to assume that certain stolen property might be located at the home of an accused. 99 N.M. at 292-93, 657 P.2d at 619-20. However, in that case we did not dispense with the basic requirement that the place to be searched must be established to be that of the accused, or that the items sought to be seized are located at the residence. *Id.*

{40}    We reaffirmed this basic requirement in *State v. Herrera*, 102 N.M. 254, 694 P.2d 510 (1985). In *Herrera*, we acknowledged that "the existence of probable cause to believe that a suspect has committed murder is ordinarily sufficient to justify a search of the suspect's home, the surrounding area, and his business." *Id*. at 257, 694 P.2d at 513. However, we made it abundantly clear that the affidavit in support of the search warrant must still set forth facts stating why law enforcement believes the residence to be searched was the home of the accused or why law enforcement believed that the evidence they sought would be located at the place to be searched. *Id*. at 258, 694 P.2d at 514.

{41}    In *Herrera*, which is strikingly similar to the present case, a thorough description of the residence to be searched was stated in the affidavit and the prosecution conceded that the affidavit lacked descriptive facts showing that the described residence was the home of the accused. *Id*. at 257, 694 P.2d at 513. As in this case, the prosecution, relying on *Snedeker*, argued that the magistrate could infer from, among other things, the detailed description of the place to be searched that the described place was the defendant's home. *Id*. This Court rejected the argument, stating that "merely because a residence is described in even minute

detail does not provide a magistrate with the necessary evidence to infer that . . . the suspect resides at that residence." *Id*. at 258, 694 P.2d at 514. In arriving at this conclusion, we analyzed our opinion in *Snedeker*, noting that we held that probable cause to believe the accused stole property entitled the magistrate to assume that the stolen property could be found at the home of the accused. *Id*. at 257, 694 P.2d at 513. However, simply because a magistrate can assume that stolen property is presently at the home of the accused does not permit the inference that the only specifically described place to be searched is the accused's home. *Id*. at 257-58, 694 P.2d at 513-14. In addition, the conclusory statement in the *Herrera* affidavit that the described residence was that of the defendant was not sufficient to establish that the place to be searched was the accused's home. *Id*. at 258, 694 P.2d at 514. A conclusory statement is insufficient because the magistrate must make an independent judgment that there is probable cause to believe that evidence of a crime is presently located at the place to be searched. *State v. Barker*, 114 N.M. 589, 591, 594, 844 P.2d 839, 841, 844 (Ct. App. 1992).

**{42}** We reaffirmed that *Snedeker* "does not do away with the basic requirement that the residence to be searched must be established to be that of the suspect, or alternatively, that the items sought to be seized are located at that residence." *Herrera*, 102 N.M. at 257-58, 694 P.2d at 513-14. We went on to note that the magistrate in *Snedeker* was given some facts from which he could infer that the accused lived at the place to be searched—namely, the affiant indicated that he had personal knowledge of where the accused resided, *id*. at 257, 694 P.2d at 513, and that "[h]is personal and household effects have been moved to the location above described to the best of [the affiant's] knowledge." *Snedeker*, 99 N.M. at 288, 657 P.2d at 615. In direct contrast to the facts in both *Snedeker* and *Herrera*, the affidavit in this case does not mention Defendant's residence, nor does it identify 1208 Juanita Street as Defendant's residence, the place where his niece resides, or as a place having any connection to Defendant or the alleged crime.

**{43}** In both *Snedeker* and *Herrera* we held that if there is probable cause to believe that the accused stole property or murdered someone, the government is entitled to search the residence of the accused. We presume as a matter of law that evidence of the crime is located at the home of the accused if there is probable cause to believe the accused stole property or committed murder. If the affidavit in support of the search warrant describes the place to be searched in minute detail and even makes the conclusory statement that the described place is the home of the accused, we do not simply ask "in context, what else could the detective have intended to say? More significant still, what other inference could the Issuing Judge reasonably have come to?" Maj. Op. ¶ 25. We have, until today, always required more. Like other jurisdictions, we have required reliable facts and circumstances to establish how the accused is connected to the place to be searched or why evidence of a crime is presently believed to be in the place to be searched. *Bouch v. State*, 143 P.3d 643, 649 (Wyo. 2006); 2 LaFave, Wayne R., *Search and Seizure* § 3.7(d) (4th ed. 2004).

**{44}** Finally, the majority opinion's reliance on the Seventh Circuit's opinion in *United States v. Hunter*, 86 F.3d 679, 681 (7th Cir. 1996) is misplaced. The affidavit in *Hunter*

11

"referred four times to Hunter's residence." *Id.* at 682. Based on this information, the *Hunter* court understandably concluded that "the warrant application and affidavit . . . clearly established that the place to be searched *was* Hunter's residence." *Id.* at 681. In direct contrast to the facts in *Hunter*, the affidavit challenged in this case makes no mention of Defendant's residence and does not identify 1208 Juanita Street as Defendant's residence, the place where his niece resides, or as a place having any connection to Defendant or the alleged crime. What the affiant knew about whether Defendant resided at 1208 Juanita Street or that evidence of the crime was presently located there was kept secret from the issuing judge. Indeed, the affiant's request to seize items that would establish who occupied or owned the premises gives rise to a reasonable inference that the affiant himself was uncertain whether the place to be searched was the residence of the accused. However, the decision as to whether there is a sufficient nexus between the alleged criminal activity, the evidence to be seized, and the place to be searched is for the court to decide, not the affiant. A basic question any judge must answer when deciding whether to issue a search warrant is "why does the government want to search this place?" If the information is not contained in the affidavit, before ruling on a request for a warrant the judge may require the affiant to appear personally and may examine the affiant under oath, provided such additional evidence is reduced to writing, supported by oath or affirmation and served with the warrant. Rule 5-211(E) NMRA. Because the affidavit in this case did not contain the requisite information, the issuing judge erred in issuing the warrant and the reviewing judge correctly suppressed the evidence.

{45}     Therefore, I respectfully dissent.

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Trujillo*, Docket No. 32,234**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-ST | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-NM | New Mexico Constitution, General |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CT-AW | Affidavit for Search Warrant |
| CA-MR | Motion to Suppress |
| CT-SZ | Search and Seizure |
| CT-SW | Search Warrant |