This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                                          **NO. 30,423**

**EDWARD BONNER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil C. Candelaria and Ross C. Sanchez, District Judges**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Defendant appeals pursuant to a conditional plea entered in two consolidated cases: Case No. CR-2008-00215 (Days Inn case), and Case No. CR-2008-00417 (Super 8 case). Defendant contends that the affidavits submitted in support of the search warrant in each case did not support the issuing judges' findings of probable cause, and thus, his motions to suppress evidence were improperly denied. We affirm both orders denying Defendant's motions to suppress.

**I.    BACKGROUND**

Two separate cases were consolidated for purposes of a conditional plea. We briefly discuss the affidavits and facts of each case before turning to the arguments Defendant raises on appeal. However, because this is a memorandum opinion and the parties are familiar with the procedural history and facts of the case, we reserve further discussion of pertinent facts within the context of the analysis.

**A.    Days Inn Case**

The affidavit submitted in support of the search warrant in the Days Inn case is dated May 23, 2007, and it contained the following relevant information. A confidential informant (CI/It/it) told the affiant (the officer) that "'it' had information about an individual known as 'Tex' who was selling crack cocaine out of rooms in the Menaul/University area. 'It' advised that 'it' has purchased crack cocaine from 'Tex' in the past and knows that he sells on a continuing and on going basis." The officer

was able to identify "Tex" as Edward Bonner [Defendant], through information provided by the CI, another confidential source, and police documentation indicating that Defendant was known as "Tex." The officer further stated that he was able to locate Defendant at "2120 Menaul Blvd NE room 5125" (the Days Inn).

The officer used the CI to execute a controlled buy from room 5125. The officer confirmed that the CI had no drugs before it entered room 5125 and kept the CI under constant surveillance while entering and exiting the room. The CI immediately returned to the officer, without stopping or meeting with other persons, and provided the officer with a substance that a field test indicated was cocaine.

The officer prepared an affidavit detailing this information within sixty-seven hours of the controlled buy. A district court judge found that the affidavit established grounds for the issuance of a search warrant and issued the search warrant for Defendant's Days Inn hotel room. Police searched Defendant's hotel room pursuant to the search warrant and found cocaine, marijuana, and drug paraphernalia.

**B.    Super 8 Case**

The affidavit submitted in the Super 8 case is dated June 27, 2007, and was prepared by the same officer and contained many similarities to the affidavit submitted in the Days Inn case. The Super 8 affidavit stated that the CI informed that "'it' knows an individual known as 'Tex' to be selling crack cocaine/cocaine on a

regular and on going basis." In addition, the affidavit stated that the CI "advised that 'It' has first hand knowledge of trafficking and 'It' states it has purchased crack cocaine/cocaine from 'Tex' in the past and could do so again for the purposes of an investigation." The officer again stated he was able to confirm the identity of "Tex" as Defendant based on previous investigations and based on the information provided by the CI. The officer also confirmed that Defendant was "occupying/renting" room 125 at the Super 8 Motel located at 2500 University Blvd., NE.

The affidavit stated that the CI told the officer that persons could walk up to Defendant's motel window, tap on the glass, and enter to purchase crack cocaine/cocaine. According to the officer, surveillance confirmed that unknown individual(s) were conducting this described behavior at room 125, where Defendant was currently "occupying/renting." A controlled buy was conducted in the same manner as in the Days Inn case with the use of the CI, and again produced a substance field tested to be cocaine. The affidavit said that the CI advised with regard to the controlled buy that it "purchased the cocaine from 'Tex' [Defendant] and could do so again in the future."

The officer again prepared the affidavit within sixty-seven hours of the controlled buy detailing the information gained in the investigation. A district court judge issued a search warrant to search room 125 at the Super 8. Police searched the

4

hotel room pursuant to the search warrant and again found cocaine, marijuana, and drug paraphernalia.

**C.     Motions to Suppress**

Defendant was charged with one count of trafficking cocaine, one count of possession of marijuana (one ounce or less), and one count of possession of drug paraphernalia in the Days Inn case, and one count of each of the same charges in the Super 8 case. The cases were assigned to different district judges in the Second Judicial District (who were also different from the district judges who issued the search warrants). Defendant filed motions to suppress evidence in each case asserting that the affidavits failed to establish probable cause. Both motions to suppress were denied by the respective district judges. Thereafter, the cases were consolidated for purposes of a conditional plea, in which Defendant reserved the right to appeal from the orders denying his motions to suppress. Defendant appeals.

**II.     ANALYSIS**

The Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution protect persons from unreasonable search and seizure. *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10. Thus, "[e]xcept in the case of a few specifically established and well-delineated exceptions, before conducting a search, the Fourth Amendment requires police to obtain a warrant issued

5

by a judge or magistrate." *State v. Trujillo*, 2011-NMSC-040, ¶ 14, 150 N.M. 721, 266 P.3d 1 (internal quotation marks and citation omitted).  However, "[a]ny search pursuant to a warrant that has an affidavit lacking in probable cause is unreasonable." *State v. Nyce*, 2006-NMSC-026, ¶ 11, 139 N.M. 647, 137 P.3d 587, *limited on other grounds by State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376.

"A search warrant may be issued when sufficient facts are presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists." *State v. Vest*, 2011-NMCA-037, ¶ 7, 149 N.M. 548, 252 P.3d 772 (internal quotation marks and citation omitted), *cert. granted*, 2011-NMCERT-005, 150 N.M. 667, 265 P.3d 718; *see* Rule 5-211 NMRA.  The degree of proof required to establish probable cause to issue a search warrant is less than a certainty of proof but more than a suspicion or possibility.  *See State v. Gonzales*, 2003-NMCA-008, ¶ 12, 133 N.M. 158, 61 P.3d 867, *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29.  "Thus, the magistrate must have sufficient facts upon which to conclude that there is a reasonable probability that evidence of a crime will be found in the place to be searched." *Vest*, 2011-NMCA-037, ¶ 7 (internal quotation marks and citation omitted).  "In making this determination, we consider solely the information within the four corners of the affidavit submitted in support of a search warrant." *Id.*

Defendant contends the affidavits in both cases failed to establish the veracity of the CI(s)[1] and that the information in the affidavits was stale due to the sixty-seven-hour lapse in time between the investigation at the hotel rooms and the preparation of the affidavits. We address our standard of review, and each argument in turn.

**A.      Standard of Review**

We review the sufficiency of an affidavit submitted in support of the issuance of a search warrant for a substantial basis to support the issuing judge's probable cause determination. *See Trujillo*, 2011-NMSC-040, ¶ 17 ("[A]n issuing court's determination of probable cause should not be reviewed de novo but, rather, must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." (internal quotation marks and citation omitted)). Under substantial basis review, "[a] reviewing court should not substitute its judgment for that of the issuing court." *Id.* (internal quotation marks and citation omitted). "Rather, it is the reviewing judge's duty to determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* (internal quotation marks and citation omitted). "The substantial

---

[1]It is unclear from the affidavits whether two different confidential informants were used in the two separate investigations, or whether the same CI was used.

7

basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 18 (alteration, internal quotation marks, and citation omitted).

The substantial basis standard "does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause." *Id.* ¶ 19 (internal quotation marks and citation omitted). "Rather, if, after reviewing the affidavit as a whole, the direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, does not support the issuing court's determination of probable cause, then the search is invalid and unreasonable." *Id.* (alterations, internal quotation marks, and citation omitted). "But, if the factual basis for issuing the warrant is sufficiently detailed in the affidavit, and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner." *Id.* (alteration, internal quotation marks, and citation omitted).

**B.    Veracity**

The *Aguilar-Spinelli* test used in New Mexico states, "[t]o support a finding of probable cause the affidavit must establish (1) the informant's basis of knowledge, and

(2) facts showing the informant's veracity." *State v. Steinzig*, 1999-NMCA-107, ¶ 17, 127 N.M. 752, 987 P.2d 409 (internal quotation marks and citation omitted), *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29; *see* Rule 5-211. Defendant does not challenge the "basis of knowledge" prong and only contends that the affidavits were deficient in establishing the CI(s)' veracity.

"Under the veracity prong, the affidavit must set forth sufficient facts for the issuing judge to independently determine either the inherent credibility of the informants or the reliability of their information." *Steinzig*, 1999-NMCA-107, ¶ 18. "Reliability of an informant may be established, among other ways, by showing that: (1) the informant has given reliable information to police officers in the past; (2) the informant is a volunteer citizen-informant; (3) the informant has made statements against his or her penal interest; (4) independent investigation by police corroborates informant's reliability or information given; and (5) facts and circumstances disclosed impute reliability." *Vest*, 2011-NMCA-037, ¶ 13 (internal quotation marks and citation omitted).

Neither affidavit established that the informant had given information to police in the past nor that it was a volunteer informant. However, the CI in each case made statements against its penal interest. Moreover, veracity was established by the successful controlled buys that were executed in each case, and the independent

9

observations of the officer that corroborated the CI'(s) statements in each case. *See State v. Lujan*, 1998-NMCA-032, ¶ 10, 124 N.M. 494, 953 P.2d 29 (concluding that veracity of the confidential informant was established based both on the reliability of the information in past cases and the controlled buy, stating: "The controlled buy also bears on the confidential informant's credibility and thereby addresses both prongs of the *Cordova* (*Aguilar-Spinelli*) test . . . [because] information about a controlled buy reduces the uncertainty and risk of falsehood about the information provided by the informant"); *see Steinzig*, 1999-NMCA-107, ¶¶ 23-24 (relying on the fact that police officers through investigation and observation independently corroborated various aspects of the information given by the informants as one factor in concluding that the issuing judge could reasonably find that the veracity of the informants had been properly established by the search warrant); *Cf. Vest*, 2011-NMCA-037, ¶ 17 (concluding that information that the confidential informant had participated in successful controlled buys *in other cases* in the past did not independently establish the veracity of the informant because those only confirmed that the individual could work well under police supervision, which we noted was "not the same as that of providing reliable information that officers then used to purchase controlled substances").

In the Days Inn case, the CI had stated that it was able to buy drugs from Defendant, that Defendant was selling out of "rooms" in the Menaul/University area and that Defendant sells "on a continuing and on going basis." The officer then witnessed the CI enter a hotel room, independently verified to be Defendant's, and return with cocaine. Likewise, in the Super 8 case, the CI was able to execute a controlled buy from Defendant's hotel room after informing the officer that he knows Defendant was selling crack cocaine/cocaine "on a regular and on going basis." Furthermore, during independent surveillance of the Super 8, the officer witnessed the exact activity by "unknown individual(s)" that the CI had indicated was a method of purchasing drugs from Defendant's hotel room.

Further, beyond the corroboration of the information given to officers by the CI(s), the affidavits provided other information supporting the CI(s)' reliability. Both affidavits stated that the CI was providing information for monetary gain and that "[c]onfidential source knows that if 'It' provides false information at anytime during this investigation, no payment will be given and criminal charges will be filed against 'It.'" We acknowledge Defendant's argument that a paid informant is less reliable than a volunteer citizen informant. However, we conclude that the CI(s)' awareness of the promise of criminal prosecution and withholding of money by giving false information nonetheless provide some indicia of reliability, even if it is not as strong

11

as that of a volunteer citizen informant. *See State v. Dietrich*, 2009-NMCA-031, ¶ 16, 145 N.M. 733, 204 P.3d 748 (quoting an out of jurisdiction case stating that while a paid informant is less reliable than a concerned citizen informant, in considering the informant's veracity, we also consider the fact that the informant provided his name to police and that subsequent police investigation corroborated the informant's statements); *Cf. Steinzig*, 1999-NMCA-107, ¶ 20 ("One who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant well knew that any discrepancies in his story might go hard with him, that is a reason for finding the information reliable." (alteration, internal quotation marks, and citation omitted)).

Because the information the CI(s) provided the officers in the investigation was verified by officer investigation, surveillance, and the controlled buys, we conclude that the veracity of the CI(s) was established in both cases. In addition, the CI(s)' statements against their penal interest, and the CI(s)' awareness of the promise of filing criminal charges and monetary withdrawal if the CI(s) supplied false information further strengthens the reliability of the CI(s). We therefore conclude that substantial evidence was presented to the issuing judge to establish the veracity of the CI(s) in both the Days Inn and Super 8 cases.

## C.    Staleness

Probable cause requires a factual showing that evidence of the crime exists on the premises to be searched. *See Gonzales*, 2003-NMCA-008, ¶ 11. Thus, information obtained under circumstances that do not support the conclusion that evidence will remain at the place to be searched when the warrant is issued is considered "stale," and cannot support a finding of probable cause. *See id.* We have previously concluded that information gathered from a hotel room forty-eight and seventy-two hours before the preparation of an affidavit contained stale information. *State v. Whitley*, 1999-NMCA-155, ¶ 5, 128 N.M. 403, 993 P.2d 117 (concluding that information in the affidavit was stale when forty-eight hours had passed since the defendant was observed selling marijuana out of a hotel room), *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29; *see also State v. Lovato*, 118 N.M. 155, 157, 879 P.2d 787, 789 (Ct. App. 1994) (finding evidence to be stale when seventy-two hours had passed between the time of a controlled buy at a hotel room and the preparation of the affidavit). Defendant therefore contends that the information in both affidavits was stale because it was gained through investigation of a hotel room conducted sixty-seven hours before the affidavits were prepared.

However, the span of time between an investigation and preparation of an affidavit is not always dispositive, as "staleness involves a variety of considerations,

13

including not only time, but also the character of the crime and the extent of prior activity, the consumable or transferable nature of the items to be seized, the information known about the suspect and his or her habits, and the location to be searched." *Whitley*, 1999-NMCA-155, ¶ 8. In line with this reasoning, we have stated that "[i]f there is a reasonable basis in the affidavit for the conclusion that the criminal activity alleged by the informer is of a continuing, ongoing nature, the passage of time between the informer's last observations of that activity and the issuance of the warrant is less significant than when no such showing is made." *State v. Garcia*, 90 N.M. 577, 579, 566 P.2d 426, 428 (Ct. App. 1977) (internal quotation marks and citation omitted).

In *Lovato*, we concluded that information obtained in a hotel room seventy-two hours before the preparation of the affidavit was stale, because the affidavit provided no evidence that indicated continuous and ongoing criminal drug activity. 118 N.M. at 158, 879 P.2d at 790. The affidavit did not state that the informant had seen other drugs, nor did it confirm that the individuals who sold the informant the drugs were still residing in the hotel room. *See id.* Because no evidence of continuous and ongoing criminal activity was included in the affidavit, we concluded that the evidence had become stale. *See id.* We reasoned that bare information of one controlled buy obtained seventy-two hours prior to the preparation of the affidavit,

14

from a transient place such as a hotel room, failed to support the conclusion that evidence of a crime would be found in the hotel room when the warrant issued. *See id.*

Likewise, in *Whitley*, we concluded that information was stale where an informant stated that it had witnessed the defendant sell marijuana in a hotel room forty-eight hours before the preparation of the affidavit. 1999-NMCA-155, ¶¶ 5, 10. Again we concluded that the affidavit did not support evidence of continuous and ongoing criminal activity. *See id.* ¶ 10. In so doing, we rejected the state's arguments that continuous and ongoing activity was established by the informant's statement that the defendant was "selling marijuana in the last forty-eight hours," and that continuous and ongoing activity could be inferred by the usual continuing nature of drug sales. *See id.* ¶¶ 6-7 (internal quotation marks and citation omitted). Rather, we concluded that the affidavit indicated nothing more than one transaction, which was insufficient to establish continuing and ongoing drug activity. *See id.* Further, we reasoned that because drugs are a highly consumable item, and the nature of the hotel room was transitory, greater uncertainty existed that the past drug sale witnessed by the informant would support a finding of evidence of a crime after the passage of time. *See id.* ¶ 9. We therefore concluded that the affidavit was "deficient in supplying details from which the issuing court could reasonably infer continuing drug activity,"

and did not provide probable cause to issue the search warrant when forty-eight hours had passed since the informant saw the drugs. *See id.* ¶¶ 5, 10.

Because the veracity of the CI(s) was established by both affidavits and Defendant does not challenge the basis of the knowledge prong of the *Aguilar-Spinelli* test, we may rely on the CI(s)' hearsay statements in the affidavits to establish probable cause. *See* Rule 5-211. We note that the affidavits often lack facts to establish the basis of the CI(s)' knowledge about the continuing and ongoing drug sales; however, because Defendant concedes the basis of knowledge prong, we must assume that the CI(s)' basis of knowledge was established.

The information in the Days Inn affidavit that related to Defendant's continuous and ongoing drug activity consisted primarily of the hearsay statements of the CI. The affidavit stated that the CI had "advised that 'it' had information about an individual known as 'Tex' who was selling crack cocaine out of rooms in the Menaul/University area. 'It' advised that 'it' has purchased crack cocaine from 'Tex' in the past and knows that he sells on a continuing and on going basis." The affidavit also stated that the CI "has proven 'Itself' knowledgeable with the patterns and activities of persons involved in [selling drugs, including cocaine]." The officer also stated: "I have also learned through these investigations that drug dealers sell drugs on a continuous and ongoing basis." In addition, the officer verified that Defendant remained in the room

in stating that "[a]s of May 23, 2007 I was able to confirm through surveillance and information provided that [Defendant] is still occupying room 5125 and will be at the time of warrant service. Prior to the execution of the warrant I will confirm that [Defendant] is still occupying room 5125."

We have previously rejected the argument that the fact that drugs are typically sold on a continuous and ongoing basis is sufficient to establish continuous and ongoing activity when an affidavit notes that a drug sale has occurred. *See Whitley*, 1999-NMCA-155, ¶ 7. We likewise do not place a great deal of weight upon the officer's acknowledgment that his prior experience establishes that drugs are typically sold on a continuing and ongoing basis, because the officer's statement is not grounded in any particular facts that Defendant was selling drugs on a continuing and ongoing basis out of his hotel room.

Nonetheless, we conclude that the officer's statement is unnecessary to our analysis, because the issuing judge could have reasonably inferred ongoing and continuing criminal activity based on the other information included in the affidavit. The CI was able to execute a controlled buy of cocaine from Defendant's hotel room after stating that he had bought crack cocaine from Defendant in the past, allowing for the reasonable inference that Defendant sold drugs on more than one occasion and could still be selling drugs out of his hotel room when the warrant issued. Further, the

affidavit stated that the CI knew that Defendant was selling crack cocaine out of "rooms" in the area where Defendant was verified to have a hotel room. Thus, the fact that a controlled buy was successfully executed from Defendant's hotel room combined with the CI's statement that he was selling out of "rooms" led to a reasonable inference of continuous drug selling by Defendant out of his Days Inn hotel room. The issuing judge also could have reasonably inferred that the CI's stated knowledge of the patterns of individuals involved in selling drugs would qualify him to accurately conclude that an individual is involved in continuous and ongoing drug activity, thereby supporting his statement that Defendant's activity was continuous and ongoing. *See State v. Rubio*, 2002-NMCA-007, ¶ 8, 131 N.M. 479, 39 P.3d 144. The affidavit also verified that Defendant would still be occupying the hotel room at the time of service of the warrant, also supporting that drugs would remain in the room if Defendant was dealing on a continuous and ongoing basis. We therefore conclude that sufficient information was included in the Days Inn affidavit for the issuing judge to reasonably infer continuous and ongoing drug activity out of Defendant's Days Inn hotel room.

In the Super 8 case, the affidavit contained the same assertions as the Days Inn case with regard to the CI's knowledge that Defendant was conducting drug dealing on a "regular and ongoing basis," and the officer's statement that his experience

established that drug dealing is typically conducted on a continuous and ongoing basis. Further, the affidavit stated that the CI "has first hand knowledge of trafficking and 'It' states that it has purchased crack cocaine/cocaine from 'Tex' in the past and could do so again for the purposes of an investigation." In addition to this more extensive statement regarding the CI's knowledge, the Super 8 case also included the observations of the officer that Defendant was "actively conducting business as described by the CI." The officer noticed "unknown individual(s)" in the area knocking on the window to enter room 125, an activity that the CI had identified as associated with buying cocaine. The affidavit also confirmed that "[Defendant] is currently occupying/renting" room 125. The CI also stated that it had purchased the cocaine in the controlled buy specifically from Defendant, and "could do so again in the future." Thus, this evidence established continuing and ongoing drug activity more conclusively than the Days Inn affidavit. We therefore conclude that sufficient information was also presented in the Super 8 affidavit from the which the issuing judge could reasonably infer continuous and ongoing criminal activity.

We have been instructed to refrain from construing affidavits in a "hypertechnical" manner, to consider all circumstantial and direct evidence, and to make all reasonable inferences that can be drawn from the affidavit. *Trujillo*, 2011-NMSC-040, ¶ 19 (internal quotation marks and citation omitted). Thus, we conclude

19

that under the substantial basis standard adopted by our Supreme Court, the cumulative information provided in the affidavit was sufficient for the issuing judge to reasonably infer that Defendant was selling drugs on a continuing and ongoing basis in both cases. Evidence was presented upon which reasonable inferences could be drawn of continuous and ongoing drug sales in the affidavits before us. Thus they are distinguishable from those in *Lovato* and *Whitley*. The evidence of continuing criminal activity and the verification that Defendant was still occupying the hotel rooms established a greater likelihood that drug related evidence would be found in the hotel rooms sixty-seven hours after the investigations. *Lovato*, 118 N.M. at 157, 879 P.2d at 789 ("The significance of the time factor depends on whether there was an isolated transaction or a continuing series of events."). The issuing judges could reasonably infer that evidence of the drug sales would still be present in Defendant's hotel rooms despite the passage of time in both cases. We therefore agree with both issuing judges, and both judges who decided the motions to suppress that the information in the affidavits was not stale.

## III. CONCLUSION

The orders of the district courts denying Defendant's motions to suppress are affirmed.

**IT IS SO ORDERED.**

20

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**