SUTIN, Judge (dissenting). {31} I respectfully dissent. {32} In reviewing a challenge to a search warrant, we do not substitute our judgment for that of the issuing court. Trujillo, 2011-NMSC-040, ¶ 17. Rather, looking at the affidavit as a whole, while considering the reasonable inferences that may be drawn from it, as well as the direct and circumstantial evidence alleged, we must determine whether it provides a “substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing.” Id. ¶¶ 17, 19 (internal quotation marks and citation omitted). “Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place}] or that evidence of a crime will be found in that location.” Id. ¶ 16 (alteration, internal quotation marks, and citation omitted). Because the relevant inquiry is whether the warrant-issuing court’s determination of probable cause was supported by a substantial basis in the affidavit, we limit our review to “the information contained in the four corners of the affidavit.” Gurule, 2013-NMSC-025, ¶¶ 16-17. If the affidavit provides a substantial basis to support a finding of probable cause, the issuing court’s determination must be upheld. Id. ¶ 16. “When ruling on probable cause, we deal only in the realm of reasonable possibilities, and look to the totality, of circumstances to determine if probable caitse is present.” Williamson, 2009-NMSC-039, ¶ 31 (internal quotation marks and citation omitted). {33} The majority places no significance on or relevance as to that part of the affidavit for the General Arnold property that recites the information in the Rhode Island property affidavit. The affidavit for the General Arnold property contained the same information that was in the Rhode Island property affidavit. The court issuing the General Arnold property search warrant had that information before it. The court’s careful reading of the affidavit would provide reasonable inferences to support issuance of the search warrant. With the information contained in the affidavit for the General Arnold property relating to the Rhode Island property affidavit and the remainder of the information contained in the General Arnold property affidavit, I conclude that there existed probable cause to issue the General Arnold property search warrant. {34} The “tip” received and the investigation conducted by Detective Fassler were rendered credible from the information Detective Fassler obtained from the Rhode Island property investigation combined with his independent observation of the General Arnold property. Detective Fassler had probable cause to seek a search warrant the moment he saw Tahir at the General Arnold property with the same sort of suspicious vehicles in sight that he discovered in his investigation of Tahir’s activities at the Rhode Island property. {35} The majority’s view that the search warrant and affidavit too broadly authorized the executing officers to search and seize “everything and anything” conducive to the investigation is based on an isolated view of the affidavit’s concluding paragraph. Majority Op. ¶ 28. Viewed within the context of the entire affidavit, an officer would reasonably discern the items to be seized under the warrant. See United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013) (declining to read a single clause of a warrant in isolation, and recognizing that “a warrant’s language must be read in context, such that the general tail of the search warrant will be construed so as not to defeat the particularity of the main body of the warrant” (internal quotation marks and citation omitted)); United States v. Conley, 4 F.3d 1200, 1208 (3d Cir. 1993) (“[T]he phrases in a search warrant must be read in context and not in isolation.”). {36} In the opening paragraphs of his affidavit, Detective Fassler stated that he had reason to believe that the following items were concealed at the General Arnold property: “stolen/altered vehicles[, vjehicles with vin plates removed, [t]ools to take and alter vehicles, documentation of altering/changing vehicles[, r]emoved vin plates, [and] NADER labelsf] to change and alter stolen vehicles[’] identities.” The affidavit included details regarding Detective Fassler’s investigation into Tahir’s VIN-switching operation at the Rhode Island property, and the fact that surveillance of the General Arnold property revealed an apparently similar operation. Against that backdrop, the affidavit concluded: “Based on the above information, and due to the circumstances, the Affiant respectfully requests this search warrant be granted in order to examine the scene for any and all evidence which may lead investigators to the offender(s) and or possible witnesses in this case[.]” Read in its entirety, the affidavit, which was attached to and incorporated by the warrant would permit an officer reading it to reasonably know that the items to be seized were those items particularly related to the at-issue VIN-switching operation, in particular the tools-of-the-trade enumerated in the initial paragraphs of the affidavit. See State v. Hinahara, 2007-NMCA-116, ¶ 9, 142 N.M. 475, 166 P.3d 1129 (stating that the test for particularity is whether the warrant would allow an officer reading it to reasonably discern the place to be searched and the items to be seized); State v. Steinzig, 1999-NMCA-107, ¶¶ 37-39, 127 N.M. 752, 987 P.2d 409 (rejecting the defendant’s lack-of-particularity argument where the items “to be searched and seized were described with sufficient particularity to be specifically related to the [specific criminal] activity believed to be occurring at” the place to be searched). To assume otherwise exhibits a lack of faith in the sensibleness of police officers charged with reading and executing the search warrant. JONATHAN B. SUTIN, Judge